UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK WILLIAM LEAR,<br><br>            Plaintiff,<br><br>    v.<br><br>D. AVILA, et al.,<br><br>            Defendants. | No. 2:17-cv-326-JAM-EFB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in this action brought pursuant to 42 U.S.C. § 1983. On September 1, 2017, the court found that his initial complaint stated a cognizable claim for Eighth Amendment deliberate indifference to medical needs against defendants Avila and Christensen and found service appropriate for the same. ECF No. 19.

Then, on December 26, 2017, plaintiff filed his first amended complaint. ECF No. 38. The court screened that complaint and determined that it failed to comply with Federal Rule of Civil Procedure 8. ECF No. 44. Specifically, the court determined that: (1) the complaint's length and poor organization rendered it difficult to identify specific claims; and (2) the complaint included multiple claims that could not be properly joined in a single action. *Id.* at 3. Plaintiff was given leave to amend in order to remedy these deficiencies. *Id.* at 4.

The second amended complaint was filed on July 24, 2018 (ECF No. 49) and the court again determined that it stated multiple, unrelated claims (ECF No. 52). Plaintiff was given

another opportunity to amend and he has now submitted his third, amended complaint. ECF No. 55. The court must screen it.

## Screening

### I. Legal Standards

Pursuant to § 1915(e)(2), the court must dismiss the case at any time if it determines the allegation of poverty is untrue, or if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant.

Although pro se pleadings are liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a complaint, or portion thereof, should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 562-563 (2007) (*citing Conley v. Gibson*, 355 U.S. 41 (1957)); *see also* Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* (citations omitted). Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). A pro se plaintiff must satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a)(2) "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 562-563 (2007).

/////

/////

II. Analysis

A. Background

Plaintiff alleges that he underwent a "botched" surgery that limited his mobility in 2015. ECF No. 55 at 4. In June of 2016, plaintiff was transferred to High Desert State Prison ("HDSP") where, he claims, he injured his back after being forced to climb stairs by staff. *Id.* Plaintiff alleges that, after this incident, he made defendants Avila and Christensen aware of his mobility issues and the hazards of a potential fall. *Id*. at 5. He claims that neither took his issues seriously and were skeptical that he had serious impairments to his mobility. *Id.* Plaintiff claims that other defendants – Ramos, Gideon, Angela, Silkwood, and Green-Leaf – told Avila and Christensen that plaintiff's MRIs were "false reads." *Id.* He claims that these other defendants' statements regarding his medical tests are the reason that Avial and Christensen refused him medical care. *Id.*

In November of 2016, plaintiff alleges that he fell after being instructed to walk through a construction ditch. *Id.* at 6. The fall resulted in injuries to his back and knee. *Id.* Plaintiff claims that Avila subsequently authored a report which minimized the incident by stating that plaintiff "sat down" in the ditch. *Id.* Shortly thereafter, however, Avila authorized a wheelchair for plaintiff. *Id.* The wheelchair allegedly gave rise to new tensions, however, insofar as plaintiff alleges that Avila ordered staff not to allow plaintiff to choose who pushed the chair. *Id.* Plaintiff ultimately decided not to use the wheelchair in order to avoid "inmate politics." *Id.*

In December of 2016, plaintiff had repeated difficulties traversing ice and snow at HDSP. *Id.* at 7. At this time, another MRI purportedly indicated that plaintiff suffered from spinal stenosis and an unnamed surgeon recommended another spinal surgery. *Id.* Plaintiff claims that, other than offering the wheelchair, neither Avila nor Christensen took further action to ameliorate his conditions. *Id.*

Separately, plaintiff alleges that Avila orchestrated, in some way the court finds difficult to comprehend, an attack on his person by other inmates. *Id.* at 8. Specifically, plaintiff claims that in January of 2017 he was attacked by two other inmates for falling, filing appeals, and "disrupting the program." *Id.* He claims that this attack was motivated by Avila telling other

inmates that there was nothing medically wrong with plaintiff and that he was, again, "disrupting the program." *Id.* Plaintiff never alleges that Avila either ordered the attack or knew that it would occur.

In another separate claim, plaintiff alleges that he was retaliated against for not accepting the wheelchair Avila prescribed for him. *Id.* at 9. Specifically, he claims that HDSP staff took his "disability placement code in January of 2017." *Id.* He does not state which staff perpetrated this retaliation. Plaintiff claims that this revocation occurred again in 2018. *Id.* at 11.

Finally, plaintiff broadly alleges that defendants Miranda, Christensen, Ramos, Avila, and other unnamed staff violated his rights under the Americans with Disabilities Act ("ADA") by refusing to order that snow and ice be moved off a pathway which he was required to traverse. *Id.* at 10. He also claims that Miranda revoked his "no-stairs chrono." *Id.*

          B.        Analysis

The court finds that the complaint fails to raise a cognizable claim. First, with respect to the claims for medical deliberate indifference, plaintiff has failed to allege that any defendant exhibited "subjective knowledge and conscious disregard of a substantial risk of serious injury . . . ." *See Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004). As to defendants Ramos, Gideon, Silkwood, and Greenleaf, plaintiff alleges only that they informed Avila and Christensen that plaintiff's MRI results were "false reads" and not indicative of major health issues. ECF No. 55 at 5. But plaintiff offers no allegations indicating that, to the extent these defendants were mistaken about his tests, they *knew* that their conclusions were erroneous. *See*, *e.g.*, *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012) (holding that, because the defendant did not believe plaintiff was suffering from a hernia, his decision to not operate was a mere "negligent misdiagnosis" rather than deliberate indifference). And plaintiff explicitly alleges that the reason Avila and Christensen elected not to provide additional care is because they relied on the MRI conclusions offered by the other defendants.[1] *See* ECF No. 55 at 5 ("Upon information and

---

[1] Elsewhere in the complaint, plaintiff relates that Greenleaf and Gideon informed him that they had contacted the surgeon who performed his "botched" surgery. ECF No. 55 at 5. They stated that the surgeon did not share plaintiff's assessment and that plaintiff's MRIs merely reflected 'scar tissue.' *Id.*

4

believe (sic) Dana Avila and Laura Christensen [were] informed by Daniel Ramos, Larry Gideon, Angela Silkwood, and Dr. Greenleaf that plaintiff's MRIs are not true and are essentially "false reads" *and this is why he was not given medical care*.") (emphasis added). Nothing in the complaint indicates that either Avila or Christensen had reason (or the authority or expertise) to reject their colleagues' assessments. Moreover, plaintiff was ultimately provided a wheelchair by Avila to ameliorate his alleged issues. *Id.* at 6. As previously noted, plaintiff had various disagreements as to who should push his wheelchair and ultimately declined to use it on that basis (*id.*), but these interpersonal disagreements do not establish that Avila's medical prescription was improper.

The court also finds that plaintiff's Eighth Amendment claim against Avila based on the inmate attack is non-cognizable. To reiterate, plaintiff alleges that two unnamed inmates attacked him and, as an apparent justification for doing so, repeated Avila's comments that nothing was medically wrong with plaintiff and that he was "disrupting the program." *Id.* at 8. But plaintiff offers no allegations connecting Avila to the attack. Clearly, he blames her for its occurrence, but nothing in the complaint, taken as true, establishes that she orchestrated the attack or knew that it was likely to happen. The court is left to infer that Avila, at some unspecified time and in some unspecified way, had a hand in the attack. But this is insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'"). And the court declines to find (to the extent that plaintiff so alleges) that Avila's comments, standing alone, amount to an Eighth Amendment violation. Even

/////

---

He also claims that Ramos again told him in November of 2016 that his MRIs indicated that nothing was wrong with him and that his condition was stable since 2014. *Id.* at 6. Plaintiff disputed Ramos' contention as to his condition's stability and noted that he had developed a foot condition that required surgery in 2015. *Id.* But this alone is not indicative of deliberate indifference insofar as plaintiff's stability was not the sole rationale underlying defendants' conclusion that he had no serious medical issues. The complaint, as noted *supra*, indicates that defendants reviewed the MRIs themselves for signs of injury and spoke with the surgeon who had previously treated plaintiff.

5

if her comments ultimately motivated the inmates' attack, there is no indication that Avila knew of or intended that outcome.[2]

Finally, plaintiff alleges that his rights under the ADA and the Eighth Amendment[3] were violated by defendants' failure to remove snow and ice from pathways which he was required to walk. ECF No. 55 at 10. Plaintiff is advised that there is no individual liability for defendants sued for ADA Title II[4] violations pursuant to section 1983. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("We therefore join the Fifth, Eighth, and Eleventh Circuits and hold that a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). Official capacity claims against individual defendants pursuant to Title II may be brought only where the plaintiff seeks injunctive relief, however. *See Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003) (discussing official capacity suits under Title II with respect to *Ex parte Young*); *see also Hutchinson v. Cal. Dep't of Corr. & Rehab.*, No. 2:13-cv-00620-MCE-AC, 2016 U.S. Dist. LEXIS 29711, *19 (E.D. Cal. Mar. 7, 2016) (dismissing individual defendants sued in official capacity under Title II where plaintiff sought

---

[2] Plaintiff also vaguely alleges that unspecified HDSP staff retaliated against him by taking his "disability placement code." ECF No. 55 at 9. But no defendant is clearly implicated in this revocation. And it is unclear that the alleged reason for the retaliation – refusal to accept the prescribed wheelchair – is the type of protected activity which can underlay a First Amendment retaliation claim. *See Blair v. Bethel School Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citing *Pinard v. Clatskanie School Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006) ("To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged *in constitutionally protected activity*; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.")(emphasis added)).

[3] The court rejects the Eighth Amendment portion of this claim. *See LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (noting that "slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment.") (quoting *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989)). And a claim based on exacerbation of plaintiff's disability by failure to clear these pathways is more appropriately brought under the ADA.

[4] Plaintiff does not indicate what section of the ADA he is suing under. Title I covers discrimination in employment, however. 42 U.S.C. § 12112. Thus, the court interprets the claim as arising under Title II which prohibits disability in provision of public services.

only monetary damages). Here, plaintiff seeks punitive and compensatory damages. ECF No. 55 at 12. He does not seek any injunctive relief. The only wrinkle is cast by his request for a declaration indicating that each defendant (in both individual and official capacity) violated his rights. *Id.* Declaratory relief, however, is appropriate "only when the challenged government activity . . . is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1990) (internal quotation marks omitted). Here, the docket indicates that he is no longer incarcerated at HDSP; he is now at California State Prison Corcoran. Thus, the failure to clear pathways of snow and ice at HDSP no longer adversely affects plaintiff.[5]

The only cognizable ADA claim for money damages would necessarily be brought against a public entity. *Lovell v. Chandler*, 303 F.3d 1039, 1051 (9th Cir. 2002). Here, plaintiff has named the public entity HDSP. *See Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998) (holding that state prisons fall squarely within the statutory definition of 'public entity,' . . . ."). To state an ADA claim against a public entity, plaintiff must allege that "(1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell*, 303 F.3d at 1052. The court finds, for screening purposes only, that plaintiff has stated a viable Title II against HDSP based on its failure to keep ADA pathways clear of ice and snow. This claim will proceed and all other claims will be recommended for dismissal.

### Leave to Amend

The court declines to grant plaintiff further leave to amend to address the deficiencies in his other claims. This action was filed in January of 2017 and, due to plaintiff's desire to amend and difficulties in presenting cognizable claims, it remains, effectively, at an incipient stage.

/////

---

[5] This calculus might change if plaintiff alleged that he was likely to be returned to HDSP at some point in the foreseeable future. He does not so allege.

7

Thus, the court will direct him to submit service documents for HDSP in order to pursue his ADA claim against it. His other claims will be recommended for dismissal.

Conclusion

Accordingly, it is ORDERED that:

1. The Clerk of Court is directed to add "High Desert State Prison" as a defendant to this action; and

2. Plaintiff's third amended complaint alleges, for screening purposes, a viable Americans with Disabilities Act claim against defendant High Desert State Prison.

Further, it is RECOMMENDED that:

1. For the reasons stated above, all claims in the third amended complaint, other than plaintiff's ADA claim against High Desert State Prison, be dismissed without leave to amend.[6]

2. This matter be referred back to the undersigned to initiate service of process of the ADA claim against defendant High Desert State Prison pursuant to the Court's E-Service pilot program for civil rights cases for the Eastern District of California.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 11, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiff is informed that dismissal without leave to amend is not the same as "with prejudice." Dismissal without leave to amend merely precludes him from reviving those claims in the active proceeding.

8